UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SANLUIS DEVELOPMENTS, L.L.C., SANLUIS
INVESTMENTS, L.L.C., and SANLUIS
CORPORACION, S.A. DE C.V.,

                Petitioners,

   -against-

CCP SANLUIS, L.L.C. and
AIP-SANLUIS, L.L.C.,

                Respondents.

06 Civ. 11531 (RJH)

**MEMORANDUM OPINION AND ORDER**

---

      Petitioners Sanluis Developments, L.L.C. (the "Company"), Sanluis Investments, L.L.C. ("Sanluis Investments"), and Sanluis Corporación, S.A. de C.V. ("Sanluis Corporación"), filed a petition in state court to vacate an interim arbitration award rendered on July 16, 2006 ("Interim Award") and a final award dated September 21, 2006, which included the addition of costs and attorneys' fees.  Respondents CCP Sanluis, L.L.C. ("CCP Sanluis"), and AIP-Sanluis, L.L.C. ("AIP-Sanluis"), removed the action to federal court pursuant to 9 U.S.C. § 205 (2006) and 28 U.S.C. § 1441(a).  Respondents have moved to dismiss the petition to vacate the arbitration award.  For the reasons that follow, respondents' motion [5] is granted.

## BACKGROUND

      The following facts are taken from the Interim Award, the Petition to Vacate the Award, and the parties' briefs submitted to this Court.

      All of the parties are Delaware limited liability companies, except Sanluis Corporación, which is a corporation organized under the laws of Mexico.  Respondents CCP Sanluis and AIP-Sanluis are limited liability companies formed in part for the purpose of making an equity

investment in the Company.  On September 20, 2000, Sanluis Investments, CCP Sanluis, and AIP-Sanluis entered into an operating agreement ("Amended Operating Agreement") pursuant to which the Company was to be owned by Class A Members and Class B Members.  Respondents are the holders of Class B Units and are thus Class B Members; Sanluis Investments is the holder of the Class A Units and is a Class A Member.

Under Section 7(a) of the related Members' Agreement, entered into on the same day as the Amended Operating Agreement, if no "Approved Sale [of the Company] nor a Qualified Public Offering has occurred by the fifth anniversary of the Closing Date [of the transaction]" then the Class B Members can "seek a sale of the Company (a 'Liquidity Transaction')" under the terms contained in the parties' agreements.  Section 7(d) of the Members' Agreement provides that in the event the Class B Units exercise their right to seek a sale of the Company, the Class A Members have the right to purchase the Class B Units at a price that is the greater of a formula set forth in Section 7(d) of the Members' Agreement or the fair market value of the Class B Units.  Section 7(c) of the Members' Agreement provides that if the parties cannot agree on the fair market value of the Class B Units an investment bank shall be appointed "to determine the fair market value of the Class B Units on a per Unit basis."

After five years passed with no Approved Sale or Qualified Public Offering of the Company, a dispute arose among the parties regarding what instructions, if any, were to be given to any investment bank that might be asked to determine the fair market value of the Class B Units in the event that CCP Sanluis and AIP-Sanluis were to exercise their right to seek a sale of the Company.  CCP Sanluis and AIP-Sanluis, the Class B Members, maintained that any determination by an investment bank of the fair market value of the Class B Units must take into account the value of the Class B Liquidation Preference that the Class B Units enjoy under

Section 9(a) of the Amended Operating Agreement. That section provides in effect that the Class B shareholders are entitled to a preferential distribution equal to their investment in the Company on the occurrence of any liquidation or sale of the Company. The Class A Members, on the other hand, asserted that any appraisal of the fair market value of the Class B Units should not take into account the Class B Liquidation Preference. Eventually the Class B Members invoked the arbitration clauses in the Amended Operating Agreement and Members' Agreement, which provide that

> In the event that any dispute, claim or controversy . . . arising out of or relating to this Agreement . . . cannot be settled by the parties using reasonable efforts such Dispute shall be resolved solely by the referral of such Dispute by any party to binding arbitration to be conducted before the International Court of Arbitration of the International Chamber of Commerce (the "ICC International Court of Arbitration").

(Amended Operating Agreement § 26(a); Members' Agreement § 25(a).)[1] Acting on the joint nomination of the parties made within the time specified in the agreements, the Secretary General of the ICC confirmed the selection of the Hon. John S. Martin as the Sole Arbitrator on January 27, 2006, and the arbitration proceeded in New York, New York. (Interim Award 4.)

On July 13, 2006, Judge Martin issued a thirteen-page Interim Award in favor of the Class B Members (respondents here). Judge Martin determined that "any investment banker who may be asked to determine the fair market value of the Class B Units should value those units as if a sale of the Company were to take place and the Class B shareholders were entitled to receive the Liquidation Preference in connection with the distribution of the proceeds of the sale." (Interim Award 12.) Thereafter, on September 23, 2006, Judge Martin issued a three-page final award that incorporated his Interim Award and, pursuant to the provisions of the

---

[1] The Class A Members (petitioners here) objected to the arbitration on procedural grounds, but because they have not moved to vacate the Award on this basis, the Court will not address that aspect of the Award further.

3

agreements between the parties, awarded to respondents their legal fees and costs. (The Interim Award and final award are hereinafter referred to simply as the "Award").

On October 2, 2006, petitioners filed a petition to vacate the Award on three grounds: (1) the Award was decided with manifest disregard of the law and the terms of the agreements and is irrational; (2) the award violates petitioners' right to due process; and (3) the arbitrator rendered an award that was beyond the scope of his authority. (*See* Pet. to Vacate ¶ 1; Pets.' Reply Memorandum of Law in Support of Mot. to Vacate Arbitration Award ("Pets.' Reply").) The crux of petitioners' argument is that the Class B Liquidation Preference is payable *only* "[u]pon consummation of a Liquidity Transaction" (Members' Agreement § 7(b)), but not in the circumstance where the Class A Members choose to purchase Class B Units from Class B Members. (*See* Pet. to Vacate ¶¶ 11, 14, 17–21; Pets.' Reply 6.)

## DISCUSSION

### I.   Legal Standards

#### A.   The Applicable International Agreement

The Inter-American Convention on International Commercial Arbitration ("Panama Convention"), *opened for signature* Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245, as implemented by Chapter 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 301–307, applies when an arbitration arises from a commercial relationship between citizens of signatory nations, in this case, the United States and Mexico. *See* 9 U.S.C. § 301; *Banco de Seguros del Estado v. Mut. Marine Offices, Inc.*, 257 F. Supp. 2d 681, 684 (S.D.N.Y. 2003) (citing *Productos Mercantiles E. Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 44 (2d Cir. 1994)). The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331. *See* 9 U.S.C. §§ 203, 301, 302.

The Panama Convention incorporates the FAA's terms unless they are in conflict with the terms of the Panama Convention.  *See Productos Mercantiles*, 23 F.3d at 45 (citing 9 U.S.C. § 307).  Accordingly, a court applying the Panama Convention may vacate an arbitration award based on the grounds recognized under the FAA.[2]  *See* 9 U.S.C. § 307; *Mut. Marine Offices*, 257 F. Supp. 2d at 685; *Home Ins. Co. v. Banco de Seguros del Estado (Uru.)*, No. 98 Civ. 6022 (KMW), 1999 U.S. Dist. LEXIS 22478, at *7 (S.D.N.Y. Feb. 17, 1999).  In addition, the agreements explicitly provide that the Award is binding upon the parties "except to the extent otherwise expressly provided by New York law or Delaware law."  (*See* Amended Operating Agreement § 26(h) (New York or Delaware law); Members' Agreement § 25(h) (New York law).)

### B. Motion to Vacate Award

"Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  *Folkways Music Publishers v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993); *see Wedbush Morgan Secs., Inc. v. Robert W. Baird & Co.*, 320 F. Supp. 2d 123 (S.D.N.Y. 2004).  The Second

---

[2] The statutory grounds for vacatur under 9 U.S.C. § 10(a) are

 (1) where the award was procured by corruption, fraud, or undue means;

 (2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Circuit has exercised "extremely limited" review of arbitration awards in general.  *See, e.g., Burns Int'l Sec. Servs. v. International Union*, 47 F.3d 14, 17 (2d Cir. 1995).  Where the arbitrator acted within his authority in making an award, the "arbitration award must be upheld when the arbitrator offer[s] even a barely colorable justification for the outcome reached.  As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  *187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 526 (2d Cir. 2005) (internal citations and quotation marks omitted).

## II. Petitioners' Proposed Grounds for Vacating the Award

### A. Manifest Disregard of the Law and the Terms of the Agreements

Petitioners' first argument in support of their petition to vacate the Award is that Judge Martin decided the issue before him with manifest disregard of the law and the terms of the agreements.  Although "manifest disregard of the law" does not appear in the FAA or the Panama Convention, an award may be vacated on the basis of this judicially created doctrine.  *See Mut. Marine Offices*, 257 F. Supp. 2d at 685 (citing *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 28 (2d Cir. 2000).  It is well settled, however, that the doctrine of manifest disregard of the law is a "severely limited . . . doctrine of last resort—its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply."  *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004); *see In re I/S Stavborg*, 500 F.2d 424, 432 (2d Cir. 1974) (finding "no basis" to reverse award "even though it is based on a clearly erroneous interpretation of the contract").  "An award may only be disrupted—if at all—if the arbitrators manifestly disregard a clearly applicable and explicit principle of contract construction."  *I Appel Corp. v. Katz*, No. 02 Civ.

8879 (MBM), 2005 U.S. Dist. LEXIS 26972, 2005 WL 2995387, at *10 (S.D.N.Y. Nov. 9, 2005) (internal quotation marks omitted).

Under the two-pronged test used to determine whether an arbitrator has manifestly disregarded the law, a court first considers whether "the governing law alleged to have been ignored by the arbitrators [was] well defined, explicit, and clearly applicable." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 934 (2d Cir. 1986). The court then determines whether the arbitrator appreciated the existence of the clearly governing legal principle but decide to ignore or pay no attention to it. *See Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 209 (2d Cir. 2002).

Here, petitioners have identified no "governing law" or other legal principle appreciated but ignored by Judge Martin. Instead, petitioners ask the Court to apply the "manifest disregard of the agreement" standard—also known as the "essence of the agreement" doctrine—which is a highly deferential standard that requires the moving party to make "a persuasive showing that the arbitrators' interpretation is contrary to the plain language of the contract." *Cytyc Corp. v. DEKA Prods., Ltd. P'ship*, 439 F.3d 27, 34 (1st Cir. 2006). Petitioners attempt to satisfy this standard by arguing that Judge Martin ignored "the Members' Agreement's clear requirement that for the Class B Unit Owners to receive a Liquidation preference as the result of their initiating a Liquidity Transaction, the Liquidity Transaction must be 'consummate[d].'" (Pets.' Reply 6 (citing § 7(b) of the Members' Agreement).)

Traditionally the "essence of the agreement" doctrine—has been confined to the review of arbitration awards issued under collective bargaining agreements. *See Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 221 (2d Cir. 2002); *see also Advest, Inc. v. McCarthy*, 914 F.2d 6, 9 (1st Cir. 1990) (setting forth the language employed in each circuit to describe this

standard). Although courts in other circuits have at times applied the "essence of the agreement" doctrine outside the labor arbitration context, *see Advest,* 914 F.2d at 9 (collecting cases), the only case within the Second Circuit to do so is *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15 (2d Cir. 1997), in which the Second Circuit asked whether the "arbitrator manifestly disregarded the terms of the agreement" by employing a test "analogous to that employed in the context of manifest disregard of the law." *Id.* at 25. After *Toys "R" Us* was decided, however, the Second Circuit clarified that the substantive body of federal law for reviewing arbitral awards arising under § 301 is "analytically distinct from the FAA" and that it would be error to collapse the analysis under the two statutes. *See Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812*, 242 F.3d 52 (2d Cir. 2001). The following year, the Second Circuit observed in *Westerbeke* that the "essence of the agreement" doctrine is "unrelated to the grounds for vacating an arbitration award under the FAA" but left it to "a future panel to decide whether the holding of *Toys 'R' Us* remains good law." *Id.* at 222.[3]

Like the Second Circuit in *Westerbeke*, *see id.* at 221, this Court need not disturb the holding of *Toys "R" Us* because, even assuming that the "essence of the agreement" doctrine applies to awards under the FAA, petitioners have not satisfied the exacting standard for vacatur. Judge Martin did not explicitly address the argument urged by petitioners here—that under

---

[3] Petitioners cite a series of cases in which courts in other circuits have applied the "essence of the agreement" doctrine to an award under the FAA. (*See* Opening Memo 5.) These cases are merely further evidence that the "essence of the agreement" doctrine originated in the collective bargaining context. *See, e.g., Cytyc Corp. v. DEKA Prods., Ltd. P'ship*, 439 F.3d 27, 33 (1st Cir. 2006) (stating that a court's power to vacate an award that "contravenes the plain language of the applicable contract" is "usually (but not exclusively) associated with labor arbitration"); *Jacada, Ltd. v. Int'l Mktg. Strategies, Inc.*, 401 F.3d 701, 712 (6th Cir. 2005) (citing *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 36 (1987) (a collective bargaining case)); *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 799 (8th Cir. 2004) (citing collective bargaining cases, as well as other cases that themselves cite to collective bargaining cases); *Piller v. Valentino*, 106 F. App'x 119, 120 (3d Cir. 2004) (citing *U.S. Steel & Carnegie Pension Fund v. McSkimming*, 759 F.2d 269, 270–71 (3d Cir. 1985) (labor arbitration case)).

section 7(b) of the Members' Agreement, the Liquidation Preference is payable *only* "[u]pon the consummation of the Liquidity Transaction"—but he clearly understood petitioners' argument and agreed that "there might be some force to [their] argument if one looked only at the language of Section 9 [of the Amended Operating Agreement] and the definition of a 'Liquidation Event.'" (*See* Interim Award 10.)  Ultimately he rejected petitioners' argument because he found that the "structure of the agreements," read together, "establishes that the Liquidation Preference was a valuable right upon which the Class B shareholders conditioned their investment in the Company." *Id.* at 11.  Judge Martin's reading of the term "fair market value" to incorporate the Liquidation Preference is not "contrary to the plain language of the contract," but instead takes into account all of the relevant language of the contract.[4]  Even if this Court were to find fault with Judge Martin's interpretation, the Court would nevertheless decline to vacate the award, as the "[i]nterpretation of . . . contract terms is within the province of the arbitrator and will not be overruled simply because [a court] disagree[s] with that interpretation." *Toys "R" Us*, 126 F.3d at 25.  While petitioners' interpretation may also be plausible, it is not so clear and explicit that a refusal to apply it would be in manifest disregard of the terms of the agreements or otherwise irrational.

### B. Petitioners' Right to Present a Defense

Petitioners next contend that Judge Martin deprived petitioners of the ability to present a defense by failing to take testimony on "words or acts" of the parties expressed or done prior to entering into the agreements, while relying on such words or acts. (Pet. to Vacate ¶ 1.)  This argument mischaracterizes the language of the Award.  Judge Martin did not speculate on the

---

[4] The Court also notes that although petitioners stridently insist that the Liquidation Preference is payable *only* "[u]pon the consummation of the Liquidity Transaction," the word "only" does not appear in section 7(b).  This is further support for the Court's conclusion that the Award is not "contrary to the plain language of the contract."

9

words or acts of the parties. He considered the language and structure of the contract and then considered how the interpretations proffered by each party fit into that structure. In so doing, he did not "substitute[] his own personal speculation . . . as to the parties' intentions and the 'words or acts' that preceded the formation of the agreements" as petitioners claim (Pets.' Reply 10), but instead applied the well-established doctrine of contract interpretation quoted in the Award:

> The court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby.

(Interim Award 10 (quoting *Atwater & Co. v. Panama R.R. Co.*, 246 N.Y. 519, 524 (N.Y. 1927).) The Court therefore declines to find that the Arbitrator deprived petitioners of their due process right to present a defense.

### C. Scope of the Arbitrator's Authority

Finally, petitioners argue that the Court should vacate the award because Judge Martin exceeded his authority by granting relief far beyond that requested by respondents in the Terms of Reference for the Arbitration. (*See* Pet. to Vacate ¶¶ 12–14 & Ex. E (Terms of Reference); Opening Memo 12–13.) Petitioners' argument is that respondents asked the Arbitrator to find that the Liquidation Preference was merely "a factor" to be used by an investment banker "determining the fair market value of the Class B Units" (Terms of Reference 5.2), but that the Arbitrator went beyond this request by stating that an investment banker "should value those units as if a sale of the Company were to take place and the Class B shareholders were entitled to receive the Liquidation Preference in connection with the distribution of the proceeds of the sale" (Interim Award 12.) They argue that "where there is no ambiguity in the relief requested in the Terms of Reference, an arbitrator has no authority to grant relief beyond that which Respondents requested . . . ." (Pets.' Reply 12).

Vacatur is appropriate "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject was not made." 9 U.S.C. § 10(a)(4). "However, vacatur based on an arbitrator's having exceeded his powers is rare." *Interchem Asia 2000 PTE Ltd. v. Oceana Petrochemicals AG*, 373 F. Supp. 2d 340, 353 (D.N.Y. 2005). Indeed, the Second Circuit has "consistently accorded the narrowest of readings to the Arbitration Act's authorization to vacate awards 'where the arbitrators exceeded their powers.'" *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 703 (2d Cir. 1978) (quoting 9 U.S.C. § 10(d)). Petitioners have cited no cases in which a court vacated an award on the ground that the arbitrators exceeded their powers in granting remedies beyond the scope of what the parties requested. This omission is not surprising, given the fact that "courts have been reluctant to vacate commercial arbitration awards on this ground, especially where there is no express restriction on the remedies an arbitrator is authorized to award in the arbitration agreement." Andrew M. Campbell, Annotation, *Construction and Application of § 10(A)(4) of Federal Arbitration Act (9 U.S.C.A. § 10(A)(4)) Providing for Vacating of Arbitration Awards Where Arbitrators Exceed or Imperfectly Execute Powers*, 136 A.L.R. Fed. 183 § 2(a) (1997) (collecting cases in which courts declined to vacate on this ground).

Because the Terms of Reference empowered Judge Martin to determine the meaning of the term "fair market value," the Court finds that Judge Martin did not decide an issue outside the scope of the Terms of Reference. In the Terms of Reference, the parties clearly asked Judge Martin to determine "[w]hat instructions, if any, are to be given to any investment banker who may be asked to determine the fair market value of the Class B units." (Terms of Reference 6.2) The Terms of Reference did not explicitly constrain the Arbitrator to choose one or the other party's definition of "fair market value," nor did they set any other restrictions as to the manner

in which he was to interpret that term or the contract generally. The fact that Judge Martin ascribed a meaning to the term "fair market value" that was different from the meanings proffered by the parties does not warrant vacatur of the award. *See Carte Blanche (Singapore) Pte. v. Carte Blanche Int'l*, 888 F.2d 260, 266 (2d Cir. 1989) (declining to find that an award of consequential damages exceeded the arbitrators' authority where the Terms of Reference posed the general question, "Has [claimant] established a claim for damages, and, if so, in what amount?").

## CONCLUSION

For the reasons stated above, respondents' motion to dismiss the petition [5] is granted. The Clerk of the Court is requested to close this case.

SO ORDERED.

Dated: New York, New York
August 2, 2007

Richard J. Holwell
United States District Judge